IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Zita Leeson Weinshienk

Civil Action No. 09-cv-00456-ZLW

ROBIN WADE,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

_____

**ORDER**
_____

    Plaintiff appeals the July 18, 2008 written decision of Administrative Law Judge E. William Shaffer (ALJ) denying her claim for Social Security Disability Insurance Benefits (DIB). The ALJ's decision was affirmed by the Appeals Council on December 30, 2008. (R. 3-5). This appeal was timely filed.

    This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court has determined that the appeal can be resolved on the parties' briefing and that no oral argument is necessary.

**BACKGROUND**

### A. Personal History, Alleged Disability, and Filing of Claims

Plaintiff was born on August 18, 1960. (R. 57). Plaintiff is married, lives in Mack, Colorado, and has completed twelfth grade. (R. 79, 109).

Plaintiff filed a DIB application on June 27, 2006, alleging a disability onset date of December 7, 2005. (R. 14). Plaintiff alleges the combination of the following conditions render her disabled: xiphodynia chest pain, fibromyalgia, hypertension, depression, pain, and psoriasis. (R. 129).

Plaintiff's date last insured for purposes of DIB was September 30, 2009. (R. 14). <u>Thus to receive DIB benefits, Plaintiff must show she was disabled between December 7, 2005 and September 30, 2009, and the impairment lasted twelve months or was expected to last twelve months.</u>[1]

Plaintiff's initial application was denied on November 15, 2006. (R. 98-100). Plaintiff timely filed a request for his case to be heard by an ALJ. (R. 87).

### B. Work History

Plaintiff has not been employed since December 2005. (R. 135). Plaintiff's last job was as a dispatcher for a cable company. (R. 171). Plaintiff claimed she stopped working because she was "unable to work with the chest pains. I can only live day by

---

[1] 42 U.S.C. § 416(i)(1); 20 C.F.R. § 404.1505(a).

day and on how I feel that day as to what I [can] or cannot do. I still can feel as though I am having a heart attack." (R. 135).

Prior to this job, Plaintiff had worked in variety of other positions. The vocational expert that testified at the administrative hearing classified these jobs as an office manager, companion, legal secretary, cook, and kitchen supervisor. (R. 51).

### C. Medical History

The pertinent medical evidence is summarized as follows. Plaintiff's medical records indicate treatment for complaints of chest pain, which was assessed by various medical providers as chest pain of unknown or unclear etiology, chest wall pain, chronic pain syndrome, fibromyalgia, chronic xiphoidynia/xiphoiditis, possible costochondritis, and/or "a wide variety of other possible etiologies, without any definitive diagnosis." (R. 187-91, 195-96, 198-99, 204-06, 222-25, 235-39, 243-56). Results of chest x-rays, echocardiograms, and stress tests showed no significant cardiac abnormalities. (R. 265-66, 300-04, 327-28, 366, 370, 376). A bone scan showed mild degenerative joint disease. (R. 209, 257). Blood tests showed no rheumatoid diseases. (R. 260, 319, 321, 362, 373-75).

Plaintiff was diagnosed with hypertension, which was controlled with medication. She also complained of fatigue and sleep disorders, Raynaud's Syndrome, and problems with her bladder that caused her to urinate frequently. (R. 222-25, 239,

243-56). The bladder problem is likely related to the medications she takes for the hypertension and pain. (R. 44).

Lynda S. Hamner, M.D., reported essentially normal objective findings on physical examinations. Dr. Hamner advised Plaintiff to quit smoking and to exercise, including stretching, swimming/pool therapy, and daily aerobic exercise, and noted that Plaintiff could "be gainfully employed on a full-time basis if it were in the mild to sedentary range." (R. 195-96, 198-99, 204-06, 293-98, 335-39).

Mynette Foley, M.D., Plaintiff's primary care physician, monitored Plaintiff's hypertension, managed her medications and treatment for chest pain, and advised her to quit smoking. (R. 187-91, 243-56, 333, 342-61). In June 2006, Dr. Foley stated her opinion, in a letter to Plaintiff's employer, that Plaintiff's diagnosis was uncertain but she "nonetheless" was "currently disabled." (R. 341).

On November 1, 2006, Dale E. Bowen, Ph.D., performed a psychological evaluation of Plaintiff. (R. 286-89). Plaintiff stated that her chief complaint was chest pain, she did not have any emotional or significant psychological problems, and she hoped to return to some kind of employment. (R. 286-88). Dr. Bowen's diagnostic impressions included pain disorder associated with psychological factors and general medical condition, chest pain, and a Global Assessment of Functioning (GAF) score of 80. (R. 288). Dr. Bowen found that Plaintiff was able to understand basic work-related instructions and that her memory, social interaction skills, and ability to focus attention,

4

sustain concentration, persistent and pace, and adapt to typical work-related stressors were all intact. (R. 288-89).

In February 2007, D. Bruce Faber, D.O., a specialist in rheumatology, evaluated Plaintiff. (R. 222-25). Dr. Faber recommended progressive muscle strengthening and medications for Plaintiff's costochondritis and fibromyalgia symptoms. (R. 222-25).

In March 2007, Dr. Foley reported that "all tests for rheumatoid diseases were normal." (R. 260). Dr. Foley's subsequent assessment of Plaintiff's condition included diagnoses of fibromyalgia and chronic pain. (R. 189).

On May 11, 2007, Dr. Foley completed a physical capacities evaluation form in which she stated her opinion that Plaintiff, in an eight-hour workday, could sit, stand, and walk no more than one hour each, with the opportunity to alternate sitting and standing at will throughout the day; use both hands for simple grasping and fine manipulation, but not for pushing and pulling; use both feet for repetitive movements as in operating foot controls; occasionally lift up to five pounds, but never lift more than five pounds; and occasionally climb, balance, stoop, kneel, crouch, but never crawl or reach above shoulder level. (R. 240-42). Dr. Foley also opined that Plaintiff was moderately restricted from exposure to cold temperatures; she suffered from fatigue related to chronic illness and pain; and she could not work full time, even in a sedentary position. (R. 241).

Donald G. Glasco, M.D., a psychiatrist, reviewed the medical evidence in November 2006 and determined that Plaintiff did not have a severe mental impairment. (R. 268-80).

**D.     The Administrative Hearing (R. 23-54)**

The administrative hearing was held via videoconferencing on April 14, 2008. (R. 25). Plaintiff was represented by a non-attorney representative. The following individuals testified: Plaintiff; Lawrence Campodonico, M.D., a medical expert; and Martin L. Rauer, a vocational expert.

Plaintiff testified that she was able to do laundry, cook, and clean with assistance; shop for groceries with her husband; could lift a gallon of milk; and was able to sit for thirty minutes and stand for sixty minutes without pain. She reported continuous pain in the xyphoid area, and this pain often traveled to her heart and collarbone. She took medication for both the pain and her hypertension, and this medication caused frequent urination. Her abilities fluctuated with her pain level. Due to the pain, she did not socialize and spent most of her time watching television. (R. 39-50).

Dr. Campodonico is an internist under contract with the Social Security Administration to provide record evaluations in Social Security cases. Dr. Campodonico reviewed Plaintiff's medical record and testified as follows. Plaintiff had two clear diagnoses: hypertension and chest pain primarily related to the xyphoid process.

Plaintiff's condition did not meet or equal the requirements of a listed impairment. Plaintiff's hypertension, under control with medication, posed no functional restrictions. The record did not support the degree of symptoms or limitations Plaintiff alleged because of chest pains and Dr. Campodonico disagreed with Plaintiff's treating physician that she was disabled because of her chest pain. According to the psychological examination, Plaintiff's pain was not associated with anxiety or depressive symptoms. An arthritis specialist found some degenerative clavicle and sternum changes that were not significant enough to be associated with Plaintiff's alleged pain and, regardless, this degeneration occurred in areas which she reported no pain. In total, the record indicated that Plaintiff's complaints of chest pain were sporadic and intermittent. Additionally, the record contained no objective tests documenting Plaintiff's complaints, her physician's opinion that she was limited in the use of her arms and hands for fine manipulation, or her physician's evaluation form that Plaintiff could sit or stand/walk only one hour each during an eight hour work day. Instead, an assessment from Dr. Hamner, that Plaintiff could work full-time in the mild to sedentary range, was more consistent with the record evidence. (R. 26-39).

    Mr. Rauer was asked to assume an individual of Plaintiff's age, with her education and past relevant work, and the Residual Functional Capacity (RFC) to perform light or sedentary work with ready access to a bathroom facility. (R. 51-52). Rauer responded that such an individual could perform Plaintiff's past relevant work as a legal secretary or office manager (skilled jobs requiring sedentary exertion); a

7

companion (a semi-skilled job requiring light exertion); and a service dispatcher (a semi-skilled job requiring sedentary exertion). (R. 51-52).

### E. The ALJ's Decision (R. 14-22)

The ALJ's written decision proceeds through all five steps of the sequential analysis. The ALJ determined Plaintiff was not disabled as defined by the Social Security Act and denied Plaintiff's application for DIB. (R. 21).

At step one the ALJ determined Plaintiff had not engaged in substantial gainful employment activity during the alleged period of disability. (R. 16). At step two the ALJ determined that Plaintiff had the following severe impairments: hypertension (currently controlled) and chest pain of unclear etiology, mostly associated with the xyphoid process. (R. 16). All other alleged impairments were found to be non-severe as they caused "no more than a minimal limitation on the ability to perform work-related activity." (R. 16). No mental impairment was found. (R. 16).

At step three the ALJ determined that Plaintiff's impairments did not meet or equal the requirements in the Listing of Impairments in order to be considered a presumptive disability. (R. 16-17).

Before proceeding to step four,[2] the ALJ determined Plaintiff's RFC as follows: ability to perform light work with ready access to bathroom facilities. (R. 17-20).

At step four, the ALJ determined that Plaintiff was able to perform her past

---

[2] 20 C.F.R. § 404.1520(a)(4) (RFC determined before proceeding to step four).

8

relevant work as legal secretary, companion, office manager, and service dispatcher. (R. 20). Regardless, the ALJ gave Plaintiff the benefit of the doubt and continued with the sequential evaluation process. (R. 20).

At step five, the ALJ found that Plaintiff had the RFC to perform the full range of light work and, under the Medical Vocational Rules 202.21 or 202.22, she is not disabled. (R. 21).

**ANALYSIS**

    **A.    Standard of Review**

When a district court reviews the Commissioner's decision to deny Social Security benefits the <u>Court's only job is to determine whether the Commissioner's factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied</u>.[3] Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[4] Since review is based on the record as a whole, the entire record must be examined to determine whether the evidence supporting the decision is substantial, taking "into account whatever in the record fairly detracts from its weight."[5] However,

---

[3]<u>Doyal v. Barnhart</u>, 331 F.3d 758, 760 (10th Cir. 2003).

[4]<u>Id.</u>

[5]<u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1214 (10th Cir. 2004) (<u>quoting</u> <u>Washington v. Shalala</u>, 37 F.3d 1437, 1439 (10th Cir. 1994)).

the Court may neither reweigh the evidence nor substitute its discretion for that of the ALJ.[6]

B.  **Determination of Disability**

An individual

> shall be determined to be under a disability only if [her] physical or mental . . . impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.[7]

Disability requires more than the mere inability to work without pain.[8]

Whether a person has a "disability" supporting entitlement to DIB is determined using a five-step sequential evaluation process, which considers whether the claimant:

(1) worked during the alleged period of disability;

(2) has a severe impairment;

(3) has a condition which met or equaled the severity of a listed impairment;

(4) can return to his or her past relevant work; and

(5) if not, whether he or she can perform other work in the national economy.[9]

---

[6]White v. Massanari, 271 F.3d 1256, 1257 (10th Cir. 2001).

[7]42 U.S.C. § 423(d)(2)(A).

[8]*See* Ray v. Bowen, 865 F.2d 222, 225-26 (10th Cir. 1989).

[9]20 C.F.R. § 404.1520(a)(4) (2008); *see* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. Id. at 751, n.2. If claimant is successful, the burden of proof falls on the Commissioner to establish

If a determination can be made at any step, it is not necessary to proceed to the next step of the analysis.[10]

A severe impairment is one that "significantly limits your physical or mental ability to do basic work activities."[11] Basic work activities means "the abilities and aptitudes necessary to do most jobs."[12] This includes:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.[13]

### C. Plaintiff's Arguments

Plaintiff's sole argument is that the ALJ erred when he did not find Plaintiff's fibromyalgia to constitute a severe impairment at step two and, therefore, his analysis at steps four and five are legally inadequate.

A review of the record indicates that, at various times, Plaintiff was diagnosed with fibromyalgia. However, these diagnoses were inconsistent and always secondary

---

the requirements of step five. Id. at 751.

[10] 20 C.F.R. § 404.1520(a)(4).

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1521(b).

[13] Id.

to Plaintiff's complaints of severe chest pain. Whether Plaintiff was diagnosed with a specific medical condition, such as fibromyalgia, is irrelevant.[14] Rather, what is relevant is the physical manifestations of her combined conditions during the time period of alleged disability. Plaintiff has provided no evidence that any limitations caused by the alleged fibromyalgia were not adequately addressed by the ALJ when he factored the limitations caused by Plaintiff's chest pains. Instead, the ALJ's decision demonstrates the opposite: he considered all of Plaintiff's pain allegations, regardless of the etiology, during the disability determination process.[15]

Plaintiff's primary reason why she claims disability is due to the pain in her upper chest region. (R. 135). This is the source of pain alleged to have caused functional limitations in her daily activities (e.g. sitting, standing, reaching, grabbing). Whether this pain originates from xiphoidynia or fibromyalgia or both is irrelevant. The ALJ correctly performed the disability analysis by instead determining the extent of the pain, independent of cause, and the limitations that this pain caused. Specifically, the ALJ found the combination of a lack of objective medical diagnoses, coupled with Plaintiff's

---

[14]"The claimant must show more than the mere presence of a condition or ailment." Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) (*citing* Bowen v. Yuckert, 482 U.S. 137, 153 (1987)).

[15]*See* 20 C.F.R. § 404.1523 ("If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.") (emphasis added). To the extent that Plaintiff's fibromyalgia can be considered to be a severe impairment, failure to declare it as such at step two is harmless error if the ALJ analyzes the functional limitations the condition causes further in the disability analysis. *See, e.g.*, Fischer-Ross v. Barnhart, 431 F.3d 729, 734-35 (10th Cir. 2005).

12

inconsistent reporting of her pain,[16] indicated that Plaintiff did not suffer from disabling pain. The Court finds that the ALJ's factual findings are supported by substantial evidence and the correct legal standards were applied.

**ORDER**

Accordingly, it is

ORDERED that the July 18, 2008 written decision of Administrative Law Judge E. William Shaffer is affirmed. It is

FURTHER ORDERED that the Complaint and cause of action are dismissed with prejudice. It is

FURTHER ORDERED that the parties shall pay their own costs and attorney's fees.

DATED at Denver, Colorado, this __22nd__ day of September, 2010.

BY THE COURT:

*[signature: Zita Leeson Weinshienk]*

ZITA LEESON WEINSHIENK, Senior Judge
United States District Court

---

[16] *See* Shepherd v. Apfel, 184 F.3d 1196, 1202 (10th Cir. 1999) (ALJ's credibility determination supported by claimant's inconsistent testimony).